UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RUTH A. NOSBISCH,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              10-CV-285S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Ruth A. Nosbisch challenges an Administrative Law Judge's ("ALJ")

determination that she is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that she has been disabled due to a series of conditions, including

carpal tunnel syndrome, tarsal tunnel syndrome, obesity, anxiety, and depression since

November 1, 2005.  Plaintiff contends that her impairments render her unable to work.

She therefore asserts that she is entitled to supplemental security income ("SSI") under the

Act.

        2.      Plaintiff filed an application for SSI on December 9, 2005, alleging disability

since November 1, 2005.  The Commissioner of Social Security ("Commissioner") denied

Plaintiff's initial application, and Plaintiff requested a hearing.  An administrative hearing

was then held on July 9, 2008 before ALJ Stanley A. Moskal, Jr., at which Plaintiff

appeared and testified.  The ALJ considered the case *de novo*, and on September 18,

2008, issued a decision denying Plaintiff's application for benefits.  Plaintiff filed a request

for review with the Appeals Council, which, on February 4, 2010, denied Plaintiff's request

for review.  Plaintiff filed the current civil action on April 7, 2010, challenging Defendant's

final decision.[1]

3.      On September 2, 2010, the Commissioner filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Plaintiff followed suit by filing her own motion for judgment on the pleadings on September 15, 2010. Briefing on the motions concluded October 7, 2010, at which time this Court took the motions under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is granted, and Plaintiff's motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1]The ALJ's September 18, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since December 9, 2005 (R. at 23);[2] (2) Plaintiff has a combination of impairments that result in a "severe" condition (Id.);[3] (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 24); (4) Plaintiff retained the residual functional capacity ("RFC") to perform sedentary to light work as defined in 20 C.F.R. 416.967(a), subject to various limitations (R. at 25);[4] and (5) considering Plaintiff's age, education, work

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ found that Plaintiff suffers from a series of impairments including carpal tunnel syndrome, tarsal tunnel syndrome, obesity, anxiety, and depression.  (R. at 23.)  The ALJ also noted that Plaintiff suffers from controlled hypertension, a pituitary tumor, "headaches, questionable migraine," and mechanical low back pain caused by mild osteoarthritis.  (Id.)

[4] Plaintiff could stand and walk for four hours and sit six to eight hours in an eight hour workday; she could occasionally lift and carry 25 pounds and frequently lift and carry 15 pounds; she could maintain a regular schedule; she would, however, have some difficulty working under moderate or heavy stress. (R. at 25.)

experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform (R. at 26).  Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from December 9, 2005, the date of her application, through September 18, 2008, the date of the ALJ's decision.  (R. at 27.)

10.     Plaintiff advances three challenges to the ALJ's decision.  First, Plaintiff argues that the ALJ erred in not finding that her migraines constituted a severe impairment.  Second, she argues that the ALJ failed to accord adequate weight to the opinion of her treating physician.  Third, she asserts that the ALJ's conclusion that she would only have difficulty working under moderate or heavy stressful conditions was improper.

11.     Plaintiff first argues that remand is necessary because the ALJ made no reference to the severity of her migraine headaches.  Plaintiff further charges that the ALJ's decision does not take into account how such severe migraine headaches would affect her RFC.

12.     At step two of the five-step analysis, an ALJ faces two distinct questions.  First, an ALJ must determine whether an impairment satisfies the durational requirement.  Unless an impairment is expected to result in death, an impairment must "last[] or [] be expected to last for a continuous period of at least 12 months" before it can be considered potentially disabling.  20 C.F.R. § 416.909.  Second, an ALJ must determine whether an impairment "limits a claimant's ability to do 'basic work activities.'"  Gray v. Astrue, No. 04 Civ. 3736(KMW)(JCF), 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (quoting 20 C.F.R. § 416.921).  "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to do basic

work activities." <u>Ahern v. Astrue</u>, No, 09-CV-5543 (JFB), 2011 WL 1113534, at *8 (E.D.N.Y. Mar. 24, 2011) (citing 20 C.F.R. § 404.1521).  In making this determination, an ALJ may "rely on what the [medical] record says, but also on what it does not say." <u>Johnson v. Astrue</u>, No. 09 Civ. 6017(RMB)(JCF), 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2d Cir. 1983)).

13.    Here, the ALJ did not identify Plaintiff's migraines as a separate severe impairment.  In support of this decision, the ALJ cited the consultative examination of Dr. John Schwab.  That doctor noted that Plaintiff did suffer from migraines, but did not find any restrictions resulting from that condition.  (R. at 152.)  Other evidence in the record supports Dr. Schwab's report.  Dr. David Brauer described Plaintiff's migraines as under control with medication, and as occurring only infrequently.  (R. at 234.)  Plaintiff's treating physician, Dr. Toni Spinaris, did not list any migraine-related impairments.  (R. at 183.) This Court therefore concludes that the ALJ's decision was supported by substantial evidence.

Additionally, although the ALJ did not individually identify migraines as a severe impairment, the ALJ did, in fact, note that Plaintiff had "headaches, questionable migraine." (R. at 23.)  Clearly, the ALJ considered the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity."  20 C.F.R. § 404.1523.  Plaintiff's own memorandum cites evidence conflating Plaintiff's migraines with other headaches she experienced throughout the month.  (Pl.'s Mem. 5-6, Docket No. 7-2.)  As Plaintiff did, the ALJ addressed Plaintiff's migraines together with her headaches, by discussing evidence relating to both.  Although not separated from the other impairments, this Court thus finds no error in the ALJ's consideration of Plaintiff's migraines as one of several impairments that together created

6

a severe condition.  See Chavis v. Astrue, No. 5:07-CV0018 (LEK/VEB), 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010) (noting that even "[wh]ere an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis").

14.     Plaintiff next argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not according Plaintiff's treating physicians adequate weight.  Plaintiff takes issue with the ALJ's reliance on the opinion of Dr. Ryan, which, unlike that of treating physician Dr. Rashida Khanam, did not find Plaintiff to suffer from major depressive disorder, but instead diagnosed her with "Depressive disorder, NOS" (Not Otherwise Specified).  (R. at 148.) Plaintiff asserts that it was the ALJ's duty to seek additional information to further develop the record as a result of this discrepancy.

15.     Under the "treating physician's rule,"[5] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999).  Moreover, SSR 96-2p provides that:

[T]he notice of the determination or decision must contain specific

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  But a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e).

16.    In the present case, the ALJ relied on the opinion of the state agency review doctor, to find that Plaintiff's anxiety and depression were nonsevere.  (R. at 26.)  The ALJ also reviewed the treatment provided by Dr. Khanam.  (R. at 24.)  Although Plaintiff argues that the ALJ should have accepted the opinion of Dr. Khanam, it is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  Such reliance is particularly appropriate when it is supported by objective

medical findings in the rest of the record.  Here, Dr. Madan Mohan conducted a review of Plaintiff's condition and determined that her medical impairments were non-severe, and diagnosed her with depressive disorder.  (R. at 156, 159.)  Dr. Schwab diagnosed depression but found no restrictions.  (R. at 152.)  Given this, the ALJ was not required to accept the treating physician's interpretation of Plaintiff's scaled Global Assessment of Functioning ("GAF") score of 55 as indicating major depressive disorder.[6]  Consequently, this Court finds that the ALJ afforded proper weight to the medical opinions contained in the record.  It is the ALJ's sole responsibility to weigh all of the medical evidence and resolve any material conflicts.  See Richardson, 402 U.S. at 399.  Under the circumstances of this case, the ALJ was not required to credit Dr. Khanam's diagnosis over that of the other examiners.

17.     Nor was the ALJ required to seek additional information concerning Plaintiff's depression.  An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information.  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).  The duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination.  Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.")); see also 20 C.F.R. § 404.1512(e);  20 C.F.R. § 416.912(e) ("When the evidence we receive from your treating

---

[6]A GAF score of 55 reflects an individual with moderate symptoms or moderate difficulty in social, occupational, or school functioning.  See Coia v. Astrue, No. 09-CV-0236-A, 2010 WL 3081332, at *5 n. 2 (W.D.N.Y. Aug. 6, 2010)

physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision"); 20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . .").

As already discussed, the ALJ had sufficient medical evidence, on which he was entitled to rely, to make his decision.  Plaintiff has identified no gaps in the record that would warrant remand for purposes of seeking additional information.  Rather, Plaintiff has only identified a disagreement between physicians that was within the ALJ's authority to resolve.  See Richardson, 402 U.S. at 399.

18.     Plaintiff finally argues that the ALJ improperly determined that Plaintiff would have difficulty working only under moderate or heavy stressful situations.  According to Plaintiff, the ALJ did not comply with SSR 85-15 because he failed to identify specific stressors, Plaintiff's reaction to those stressors, and did not make a vocational assessment of the effects of these stress reactions on Plaintiff's occupational base.  Plaintiff concludes that the ALJ's finding is not supported by any evidence in the record.

19.     As a preliminary matter, SSR 85-15 is inapplicable to the present case. Plaintiff suffered from both exertional impairments, like carpal and tarsal tunnel syndrome, as well as non-exertional impairments, like anxiety and depression.  (R. at 25.)  SSR 85-15, however, only addresses the medical-vocational rules for evaluating *solely* non-exertional impairments.  Roma v. Astrue, No. 10-4351-cv, 2012 WL 147899, at *4 (2d Cir. Jan. 19, 2012) (summary order) (finding SSR 85-15 inapplicable in cases where "claimant suffers from a combination of exertional and non-exertional impairments").

10

Putting aside that fact, the ALJ's decision states that the state agency review doctor found Plaintiff's anxiety and depression to be nonsevere.  (R. at 26.)  The ALJ then went on to determine that Plaintiff would have difficulty working under moderate or heavy stressful conditions.  (Id.)  In making this finding, the ALJ specifically referenced Plaintiff's lack of desire to treat her anxiety and depression through counseling, as contradicting any finding of a more severe limitation.  (Id.)  Further, the opinions already discussed support the ALJ's determination that Plaintiff retained the mental capacity for unskilled work.  (R. at 147, 152.)  In particular, Dr. Ryan's opinion noted that Plaintiff could follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, make adequate decisions, and relate with others.  (R. at 147.)  That opinion also stated that Plaintiff was "having difficulty dealing with stress" but that her prognosis was fair, with treatment.  (R. at 147-148.)  Given Plaintiff's documented abilities, despite her stress-related difficulties, the ALJ properly ascribed a low-stress limitation.  See Cross v. Astrue, No. 08-CV-0862, 2010 WL 2399379, at *13 (N.D.N.Y. May 24, 2010) (substantial evidence supported ALJ's finding that Plaintiff could work in a low-stress environment where physicians opined that she could understand and carry out simple instructions, maintain attention and concentration, but would have difficulty handling stress); McGriff v. Comm'r of Soc. Sec., No. 1:08-CV-0952 (LEK/VEB), 2009 WL 4042126, at *6 (N.D.N.Y. Nov. 16, 2009) (finding no evidence that Plaintiff suffered substantial loss of ability to perform basic work-related activities in SSR 85-15 despite physician's report noting difficulties dealing with stress).

Given this evidence, this Court is unpersuaded that remand is necessary for a more extensive discussion of Plaintiff's ability to perform "low-stress" work.  See Payne v. Astrue, No. 3:10-cv-1565 (JCH), 2011 WL 2471288, at *3 (D. Conn. June 21, 2011) (upholding

ALJ's finding of "supervised, low stress environment" limitation where evidence did not support more significant cognitive or psychological impairment).

20.     After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.


        IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No.4) is GRANTED.

        FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

        FURTHER, that the Clerk of the Court is directed to close this case.

        SO ORDERED.


Dated:   March 25, 2012
          Buffalo, New York

                                                    /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                     Chief Judge
                                             United States District Court